IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MICHELLE BONDS, ET AL.,                    *
                                           *
                    Plaintiffs,            *
                                           *
vs.                                        *       No. 4:09CV00968 SWW
                                           *
BOARD OF EDUCATION OF THE                  *
LITTLE ROCK SCHOOL DISTRICT,               *
ET AL.,                                    *
                                           *
                    Defendants.            *


**Memorandum Opinion and Order**

Before the Court is defendants' motion for summary judgment to which plaintiffs

responded.  Defendants filed a reply to the response.  For the reasons stated below, the motion is

granted.

**Background[1]**

Separate Plaintiff Michelle Bonds filed a class action complaint pursuant to 42 U.S.C. §

1983 against defendants on April 30, 2008, alleging race discrimination in connection with

recommendations of the Little Rock School District ("LRSD") Reorganization Audit of 2005.[2] On

February 4, 2009, the Court granted Bonds' motion for voluntary dismissal.  On December 31,

2009, Bonds filed essentially the same putative class action.  Defendants moved to dismiss the

class action allegations of Bonds' complaint because she failed to timely file a motion for class

certification in the previously-filed complaint.  The Court granted the motion and dismissed the

---

[1]For the most part, this background information is taken from Defendants' Statement of Undisputed
Facts to which plaintiffs do not object.  *See* Pls.' Substituted Resp. to Defs.' Statement of Material Facts Not
in Dispute.  Docket entry 67.

[2]*Bonds v. Little Rock School District et al.,* Case No. 4:08cv372 SWW.

class action allegations.  On April 12, 2010, Bonds filed a motion for leave to amend her complaint to add the claims of nineteen additional plaintiffs.  Bonds alleged in her proposed amended complaint that the plaintiffs were employed by the LRSD until June 2005 "or thereafter at which time each plaintiff suffered an adverse employment action by the District."  Am. Compl. at ¶ 2.  The Court granted the motion to amend but held that the claims of the additional nineteen plaintiffs in the proposed amended complaint do not relate back to the complaint Bonds filed in 2008.

Plaintiffs filed their amended complaint on August 23, 2010, adding the claims of the nineteen additional plaintiffs.  Since then, ten plaintiffs voluntarily dismissed their claims, some with and some without prejudice.[3]  The remaining plaintiffs are: Bonds, Vertina Banks, Patricia Crosslin, Angela Geans, Joyce Jacobs, Linda Jones, Clementine McDuffie, Valerie Rouse, and Rose Wilson.  They bring their claims of race discrimination under 42 U.S.C. § 1983 alleging violations of the due process and equal protection clauses of Fourteenth Amendment.  Plaintiffs complain that the reorganization the LRSD undertook in 2005 was motivated by race and had a disparate impact on African American employees of the LRSD.  They claim they each suffered an adverse job action as a result of the reorganization and that since the reorganization, they sought other positions in the LRSD and were denied those positions because of race.

Defendants move for summary judgment on plaintiffs' claims, arguing there is no evidence of intentional discrimination or that the reorganization was racially motivated.  Further,

---

[3]The Court dismissed the claims of Rhonda Banks, Frederick Carroll, Jo Evelyn Elston, Joanna Harris, Marie McNeal, Shelia Green Hayes; Regina Moore, Warrine Robinson, Rosalyn Summerville, and Marian Woods.  Defendants seek the dismissal of the claims of separate plaintiff Rodney Campbell for failure to prosecute.  Plaintiffs deny Campbell failed to prosecute his case but do not object to a dismissal without prejudice.  The Court finds Campbell's claims should be dismissed without prejudice.

defendants argue plaintiffs have no evidence to establish that they were unlawfully denied promotions.  Defendants argue that some of the plaintiffs' claims are time-barred and others should be dismissed for failure to exhaust.[4]

## Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d

---

[4]Defendants argue plaintiffs' claims should be dismissed for failure to exhaust.  In *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980 (8th Cir. 2011), the plaintiff filed a charge of discrimination with the EEOC, claiming he was denied a position in retaliation for previous EEOC activity.  He did not claim gender discrimination with regard to the employment decision until he filed a complaint in federal court, wherein he alleged retaliation as well as gender discrimination pursuant to Title VII and § 1983.  The Eighth Circuit held that the exhaustion requirement applies equally to discrimination claims brought under § 1983.  Recognizing exhaustion is not jurisdictional in nature, the Eighth Circuit went on to consider the merits of Tyler's gender discrimination claim.

399, 401 (8th Cir. 1995).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Matsushita,* 475 U.S. at 587 (citations omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

**Discussion**

Plaintiffs claim defendants violated their constitutional right to equal protection and due process of law guaranteed by the Fourteenth Amendment by implementing the reorganization and by denying them specific jobs for which they applied.

1.      The Reorganization Audit of 2005

According to defendants, the purpose of the reorganization was to streamline the organizational structure of the LRSD after consultants found that the LRSD's central office was overstaffed with the result that the LRSD was unable to effectively serve the needs of the students, teachers, and principals at school sites.  At the time of the 2005 reorganization, the LRSD employed approximately 3,094 employees.  There are two categories of employees: certified employees (those positions requiring a teaching certificate) and classified employees.  In Spring 2005, there were approximately 1,009 classified employees; approximately 746 were African Americans.  In all, there were 170 persons affected by the reorganization: 103 African Americans, 65 Caucasians, 1 Hispanic, and 1 Other.  Of the 170 employees affected, only 54 employees experienced a decrease in salary.  The remaining employees either resigned, retired, saw no change in salary or saw an increase in salary.  Of the 54 employees whose salary decreased, 37 were African American and 17 were Caucasians.  Of the 20 highest paid employees

in the LRSD, 14 are black, six are Caucasian.  Of the 50 highest paid employees, 29 are black.

The last two school superintendents and the current superintendent are black.

Plaintiffs claim the LRSD created and implemented the 2005 reorganizational plan with

the knowledge that the reorganization would have a disparate impact on African-American

employees.  Plaintiffs cite the protestations of Katherine Mitchell, a black school board member,

who argued that the LRSD should wait at least a year so that any reorganization could be more

carefully considered.[5]  Dr. Mitchell voiced her concern to her fellow School Board members and

the Superintendent that the plan would disparately impact black employees.[6]  Even though the

superintendent who proposed the plan is black, plaintiffs assert through the testimony of Mitchell

that Brooks was directed to initiate the reorganization by some of the white board members.

Plaintiffs complain about the speed with which the LRSD developed and implemented the

reorganization and  present evidence that the plan was not effective and ended up costing the

LRSD more money than it was supposed to save.[7]

Plaintiffs argue that out of the 170 classified staff affected by the reorganization, 103

(60.6%) were black.  However, 54 (68.5%) of black classified staff received a reduction in pay as

a result of the reorganization.  Plaintiffs contend that the fact that the defendants were warned that

the reorganization potentially would have a disparate impact on black classified staff and

proceeded with the plan is evidence of discriminatory intent.

---

[5]Pls.' Resp. to Defs.' Mot. Summ. J., Ex. 1 (docket entry 66-1) at 10.

[6]*Id*., Ex. 7 (docket entry 66-7).

[7]*Id.*, Ex. 3 (docket entry 66-3).

> The central purpose of the Equal Protection Clause of the Fourteenth Amendment
> is the prevention of official conduct discriminating on the basis of race. It is also
> true that the Due Process Clause of the Fifth Amendment contains an equal
> protection component prohibiting the United States from invidiously
> discriminating between individuals or groups. But our cases have not embraced the
> proposition that a law or other official act, without regard to whether it reflects a
> racially discriminatory purpose, is unconstitutional Solely because it has a racially
> disproportionate impact.

*Washington v. Davis*, 426 U.S. 229, 239 (1976)(internal citation omitted).  "Proof of racially

discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265

(1977).

The Court finds plaintiffs fail to come forward with evidence from which a reasonable jury

could find that the defendants had a discriminatory intent or motive in implementing the

reorganization plan.  There were six members on the transition team who reviewed positions and

determined which positions would be eliminated or reclassified.  Two of the team members were

black.  According to the affidavit of Beverly Williams, the team did not look at individual

employees but at job functions to determine which positions could and should be eliminated.[8]

Plaintiffs have come forward with no credible evidence from which a jury could find that

defendants acted with an intent to discriminate against black employees or that their motivation in

reorganizing the staff was to deprive black employees of their positions with the LRSD.[9]

---

[8]Defs.' Mot. Summ. J., Williams Aff. (docket entry 52-29).

[9]Plaintiffs state they "are not alleging a disparate impact claim *per se* . . ."  *See* Pls.' Br. in Resp. to
Defs.' Mot. Summ. J. at 4.  "Where a plaintiff alleges disparate impact discrimination, the issue is not whether
the employer intended to discriminate, but whether a facially neutral employment practice adversely affects
disproportionate numbers of minorities and, if so, whether the practice is justified by business necessity.  Prior
to seeking a judicial remedy for such discrimination, a Title VII plaintiff must file a discrimination charge
with the Equal Employment Opportunity Commission (EEOC) within 180 days after the alleged unlawful

Defendants also argue that plaintiffs' claims of discrimination based on the 2005 Reorganization Audit are time-barred because they did not file their complaint within the three-year statute of limitations for § 1983 claims.[10]  In response, plaintiffs argue that the paycheck accrual rule set forth in the Lilly Ledbetter Fair Pay Act ("FPA") applies to their § 1983 claims.

In *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), the plaintiff alleged she had received poor evaluations because her supervisor discriminated against her on the basis of gender.  Because of these poor evaluations, the plaintiff received less pay than she would have absent such evaluations.  She filed a Title VII action, alleging a pay discrimination claim and an Equal Pay Act claim.  Her employer argued her Title VII claim was time-barred because the alleged discriminatory acts did not take place within 180 days of the filing of the complaint with the EEOC.  On appeal, the plaintiff argued that each paycheck she received was a separate discriminatory employment practice that restarted the EEOC charging period.  The Supreme Court disagreed, holding her claim was a discrete act time-barred by the statute of limitations, rather than a continuing violation.  The Supreme Court explained that Ledbetter did not claim "that intentionally discriminatory conduct occurred during the charging period or that discriminatory decisions that occurred prior to that period were not communicated to her." *Ledbetter*, 550 U.S. at 628.  The Supreme Court said that the "charging period is triggered when a discrete unlawful practice takes place.  A new violation does not occur, and a new charging period does not

---

employment practice. . . . We thus conclude that a Title VII disparate impact claim may not be asserted in a § 1983 action." *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987).

[10] Arkansas's three-year personal injury statute of limitations applies to plaintiffs' § 1983 claims. *See Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001).

commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." *Id.*

In response, Congress enacted the FPA in 2009.  The FPA amends Title VII by adding the following provision:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A).  Plaintiffs cite *Groesch v. City of Springfield, Ill.*, 635 F.3d 1020 (7th Cir. 2011) in support of their argument that the FPA applies to their claims made under 42 U.S.C. § 1983.  In *Groesch*, the Seventh Circuit held that the paycheck accrual rule applied to city police officers' § 1983 equal protection claims arising from the city's disparate treatment of a similarly-situated African American officer.

Even if the Court were to extend the FPA to § 1983 claims, the paycheck accrual rule applies only to claims of compensation discrimination.  *See Noel v. The Boeing Co.*, 622 F.3d 266, 277 (3rd Cir. 2010)(plain language of FPA covers compensation decisions and not other discrete employment decisions).  *See also Almond .v Unified Sch. Dist. No.* 501, 749 F.Supp.2d 1196, 1209 (D. Kan. 2010) (decision to eliminate position and transfer employee to lower paid position not a "compensation decision" or a "compensation practice" under the FPA); *Tryals v. Altairstrickland, LP*, No. H-08-3653, 2010 WL 743917 at *7  (S.D.Tex. February 26, 2010) ("The rule set out in *Ledbetter* and prior cases - that 'current effects alone cannot breathe new life into prior, uncharged

discrimination,' is still binding law for Title VII disparate treatment cases involving discrete acts other than pay").

Plaintiffs' complaint addresses the effect the reorganization had on their salaries. They mention the FPA for the first time in their response, stating they suffered a reduction in pay beginning in July 2005 and argue they continue to make less in salary than they would have made if not for the reorganization. Plaintiffs do not allege defendants made a discriminatory compensation decision or engaged in a practice of discriminating on the basis of race as to compensation. They complain about losing jobs and being demoted because of a down-sizing or reorganization in staff. There is no allegation that white employees were treated more favorably than black employees as to their compensation in performing the same job. Further, plaintiffs' claims relating to the reorganization arose out of a discrete act that occurred in 2005. They were notified in 2005 that their positions were being eliminated. Unlike in *Ledbetter*, the claims here are not based on "the kinds of subversive decisions creating undetected wage disparities that the FPA was intended to protect against." *Almond*, 749 F.Supp.2d at 1214.

The Court finds plaintiffs claims of discrimination relating to the reorganization are untimely. "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). The adoption of the reorganization plan which resulted in plaintiffs' losing their jobs happened in July 2005.[11]

2. Individual Claims

---

[11]Plaintiff Vertina Banks' position was not eliminated during the 2005 reorganization. Her only claim in this case is related to her non-selection for the Assistant Procurement Director position.

Plaintiffs assert "each sought other positions in the district between June, 2005 and the present for which they were qualified but were rejected.  While several plaintiffs kept their positions, their pay [w]as materially reduced."  Am. Compl. at ¶ 13.  Plaintiffs Patricia Crosslin, Clementine McDuffie, Angela Geans, Joyce Jacobs, and Linda Jones base their claims on the 2005 Reorganization Audit, alleging that they continue to suffer the effects of reduced pay because their positions were downgraded or eliminated in the reorganization.  The Court previously found that plaintiffs' claims relating to the reorganization are untimely.  Defendants are entitled to summary judgment on the individual claims of Crosslin, McDuffie, Geans, Jacobs, and Jones because they are untimely.

<u>Michelle Bonds</u>

At the time of the reorganization, Bonds worked as a secretary in the Communications Department.  Bonds remained in that position until May 2005 when the position was eliminated as part of the reorganization.  Before the 2005-2006 school year started, Bonds was hired as the bookkeeper-secretary at Southwest Middle School ("Southwest").  She worked at Southwest for the entire 2005-06 school year.  At the end of the 2005-06 school year, the LRSD closed Southwest.  Bonds was offered a position at Felder Academy ("Felder") as a media specialist for the 2006-07 school year.  In 2008, her position was reclassified and her duties changed.  Bond now works at Felder in a Secretary Senior position.   Her salary is $36,000.

For those persons whose positions were being eliminated in the reorganization or whose salary was being reduced, the LRSD offered what was called a "soft-landing" for one year.  The LRSD paid the affected employee the salary she was making in her new position prior to the reorganization regardless of the designated salary for the new position.  Plaintiff Bonds' salary in

the Communications Department was $35, 920.00.  The salary for the new position at Southwest was $30,660.00 but she was paid an additional $4,932.00 to make up the difference.  When her position at Southwest was eliminated, Bonds received another soft landing.  Accordingly, her salary did not change when she went to Felder although the salary for the position at Felder was less than her salary for the position at Southwest.  Bonds received a third soft landing in 2007-08.  Thus, Bonds' salary did not decrease from the date of the reorganization until the 2008-09 school year.

During discovery, Bonds identified 24 positions she applied for between the reorganization and March 2011.  She was rejected for them all because, according to defendants, the person selected for those positions was more qualified than Bonds.  Defendants move for summary judgment, arguing Bonds cannot establish a *prima facie* case of race discrimination in regards to 15 of the positions because they went to African-Americans.  As to the other positions, defendants assert they hired the most qualified person for the position, and Bonds admits she has no knowledge of the qualifications of the other applicants but asserts only that she should have been selected based on seniority.

In response to defendants' motion, Bonds seems to abandon her claims of unlawful denial of promotions and to base her claim on the loss of her position due to the reorganization.  She states: "Because Bonds did not have a reduction in her pay because of the 'soft landings' until the 2008-09 school year, she argues that the adverse employment action did not take place until that school year.  Therefore, her complaint regarding the 2005 Reorganization Plan is timely.  In the

alternative, Bonds, who still works for the LRSD, contends that the paycheck accrual rule applies to her § 1983 claim."[12]

The Court previously found plaintiffs failed to come forward with credible evidence to show defendants engaged in intentional discrimination in implementing the reorganization.  In addition to finding no intentional discrimination, the Court rejects Bonds' argument that her claim as to the reorganization is timely because she did not begin to suffer the consequences until the 2008-2009 school year.  An alleged unlawful employment practice occurs when the employee receives notice of the decision not when the effects of a earlier employment decision are felt. *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980).

To the extent Bonds continues her challenges to defendants' decisions not to select her for the various positions for which she applied, the Court finds there is no evidence to support a finding that defendants' reasons were pretextual.

<u>Rose Wilson</u>

Rose Wilson was employed in the LRSD Child Nutrition Department as an Administrative Assistant before the 2005 Reorganization.  As a result of the reorganization, her position was reclassified after several others were eliminated and opened to bid allowing Wilson, along with secretaries whose positions were eliminated, to apply for the reclassified position.  She learned around May 9th or 10th that she was not selected, and on August 19, 2005, she was assigned to a position as a cafeteria worker for the 2005-06 school year.  She requested and went on medical leave on or about August 29, 2005.

---

[12]Pls.' Br. in Supp. of Resp. to Defs.' Mot. Summ. J. at 7.

Wilson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 29, 2005, claiming she was not selected for the Administrative Assistant position because of her race.  The EEOC right-to-sue letter is dated April 19, 2006.   Wilson began working for Philander Smith College, on April 24, 2006, where she remains employed.  Wilson remained on medical leave from the LRSD, however, until she provided notice on May 8, 2006, of her resignation effective May 19, 2006.

Wilson applied for an Administrative Assistant in the Child Nutrition Department of the LRSD in 2007.[13]  Defendants state they selected Deanne Deckard, a white woman, because she scored higher based on questions the interviewers asked and PowerPoint and letter-writing tasks performed during the interview.  Wilson downplays the successful candidate's higher score and argues defendants' reasons for their selection is pretextual because her experience and knowledge in food service are more relevant.

That an unsuccessful applicant possesses experience and other qualities important to the position does not suffice to raise an inference that the employer's stated rationale for giving the position to another is pretextual.  *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995), "[F]ederal courts are not self-appointed personnel managers, and they may not second-guess the fairness or wisdom of an employer's nondiscriminatory employment decisions." *Day v. Johnson*, 119 F.3d 650, 657 (8th Cir. 1997).  The Court's inquiry "is limited to whether the employer gave an honest explanation of its behavior, not whether its action was wise, fair, or correct." *McKay v. U. S. Dep't of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003)(internal quotation and citation omitted).

---

[13]Defs.' Mot. Summ. J., Lilly Bouie Aff. (docket entry 52-32).

The Court finds Wilson fails to present any evidence that she was more qualified than Deckard and that the stated reason for her non-selection is false.  The Court thus finds defendants are entitled to summary judgment on Wilson's race discrimination claim.

Vertina Banks

On October 12, 2006, Vertina Banks received notice that she was not selected for the Assistant Procurement Director position she applied for in September 2006.  Defendants selected a white woman, Cathy Coston.  Banks alleges she was more qualified than Coston and was denied the position because of her race.  Defendants move for summary judgment on the basis that Banks' claim is untimely and because she has no evidence that she was more qualified than Coston.

The Court finds Banks claim is untimely because she did not file her complaint until December 31, 2009,[14] more than three years after learning she was not selected.  In addition, the Court finds Banks has no evidence to establish that defendants' reason for selecting Coston was false and that she was more qualified than Coston.

The job posting for the procurement position included a requirement of two years of either supervisory or leadership experience.[15]  Banks testified that when she worked at the LRSD, she would periodically fill in for the previous Assistant Director who directly supervised four employees.  Banks said she never had occasion to evaluate or discipline employees.[16]  Banks testified she knew Coston was a procurement supervisor with the State of Arkansas and has a

---

[14]Plaintiff Bonds filed her second complaint on December 31, 2009.  The amended complaint, which included Banks as a plaintiff, was filed August 23, 2010.  Even relating Banks' claim back to the complaint filed in December 2009, it is untimely.

[15]Defs.' Mot. Summ. J., Ex. P (docket entry 52-16).

[16]Pls.' Sub. Resp. to Defs.' Mot. Summ. J., Ex. 4 (Banks Dep.) at 19-20.

master's degree.[17]   Because Banks fails to establish she is more qualified than Coston, defendants

are entitled to summary judgment on Banks' claim.

Valerie Rouse

Plaintiff Rouse claims defendants discriminated against her by failing to hire her as a

Parent Involvement Facilitator at Forest Heights Middle School and Counselor at Bates

Elementary School.  She applied for these positions on or after August 23, 2007.  Defendants

argue Rouse's claims should be dismissed because she failed to exhaust administrative remedies.[18]

They also assert she cannot establish a *prima facie* case of race discrimination with respect to

either position because they were both filled by a black person.  Plaintiff Rouse argues she does

not have to show that a person who is not in the same protected class filled the vacant position in

order to establish a  *prima facie* case.

Under the familiar *McDonnell Douglas* burden shifting framework, a plaintiff must

establish a *prima facie* case of discrimination in hiring by showing that: (1) she is in a protected

class; (2) she was qualified for an open position; (3) she was denied that position; and (4) the

employer filled the position with a person not in the same protected class.  *Amini v. City of

Minneapolis*, No.10-2888, 2011 WL 2610749 at *5 (8th Cir. July 5, 2011).  Because Rouse cannot

---

[17]Defs.' Mot. Summ. J., Banks Dep. at 22 (docket entry 52-25).

[18]Defendants argue plaintiffs' claims should be dismissed for failure to exhaust.  In *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980 (8th Cir. 2011), the plaintiff filed a charge of discrimination with the EEOC, claiming he was denied a position in retaliation for previous EEOC activity.  He did not claim gender discrimination with regard to the employment decision until he filed a complaint in federal court, wherein he alleged retaliation as well as gender discrimination pursuant to Title VII and § 1983.  The Eight Circuit held that the exhaustion requirement applies equally to discrimination claims brought under § 1983.  Recognizing exhaustion is not jurisdictional in nature, the Eighth Circuit went on to consider the merits of Tyler's gender discrimination claim.

establish that the positions were filled by someone not in her protected class, the Court grants defendants' motion for summary judgment.

## Conclusion

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [docket entry 52] is granted.  Judgment will be entered accordingly.

DATED this 8th day of July, 2011.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE